FILED
2011 Mar-16 PM 02:37
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| SABRA J. BOUTWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.     ) | CIVIL ACTION NO. 10-G-1092-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The Plaintiff, Sabra J. Boutwell, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

2

> (3)   whether her impairment meets or equals one listed by the Secretary;
>
> (4)   whether the claimant can perform her past work; and
>
> (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Randall C. Stout, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff was able to perform her past relevant work, and accordingly found her not disabled.

### FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases. These problems have been recognized by the courts. In Sarchet v. Chater, 78 F.3d 305 (7th Cir. 1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. See Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 Arthritis

>  & Rheumatism 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee
> & Maxine A. Papadakis, Current Medical Diagnosis & Treatment 1995
> 708-09 (1995).  Its cause or causes are unknown, there is no cure, and, of
> greatest importance to disability law, its symptoms are entirely subjective.
> There are no laboratory tests for the presence or severity of fibromyalgia.
> The principal symptoms are "pain all over," fatigue, disturbed sleep,
> stiffness, and—the only symptom that discriminates between it and other
> diseases of a rheumatic character—multiple tender spots, more precisely 18
> fixed locations on the body (and the rule of thumb is that the patient must
> have at least 11 of them to be diagnosed as having fibromyalgia) that when
> pressed firmly cause the patient to flinch.  All these symptoms are easy to
> fake, although few applicants for disability benefits may yet be aware of the
> specific locations that if palpated will cause the patient who really has
> fibromyalgia to flinch.  There is no serious doubt that Sarchet [the plaintiff]
> is afflicted with the disease but it is difficult to determine the severity of her
> condition because of the unavailability of objective clinical tests.  Some
> people may have such a severe case of fibromyalgia as to be totally disabled
> from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome
> (ABC of Rheumatology)," 310 British Med.J. 386 (1995); Preston v.
> Secretary of Health & Human Services, 854 F.2d 815, 818 (6th Cir.1988)
> (per curiam), but most do not and the question is whether Sarchet is one of
> the minority.

78 F.3d at 306-307.  Other courts have also recognized that fibromyalgia can be disabling. Kelly v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its illusive nature, the presence of fibromyalgia can be objectively verified in some cases.  As noted in Sarchet, there are tender areas, or "trigger points," which are well defined and cause pain upon palpitation.  Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed.  Kelly at 589 (diagnosis of fibromyalgia is

4

clinically supported by trigger point injections).  Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

### THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff has been treated by Dr. Sparks for fibromyalgia for a number of years. On February 8, 2008, Dr. Sparks completed an RFC questionnaire. He indicated that the plaintiff meets the American college of rheumatology criteria for fibromyalgia and that her symptoms were stable but not improving. Dr. Sparks indicated the plaintiff would be able to sit for a total of two hours and stand/walk for a total of two hours in an eight-hour workday. Dr. Sparks indicated on the form that the plaintiff would be limited to using her hands and fingers for only five percent of an eight hour workday. Dr. Sparks indicated on the form that the plaintiff would need to take two to three unscheduled five minute breaks during an eight hour workday. Dr. Sparks also indicated the plaintiff would miss about three days per month due to her impairment.

At the plaintiff's hearing the ALJ elicited testimony from a vocational expert (VE). The VE was asked whether the plaintiff would be able to work if she had to miss more than two days on a monthly basis. She testified that such a restriction "would eliminate all work." The VE testified that the plaintiff would be unable to perform full time work if she were limited in sitting, walking, and standing as indicated by Dr. Sparks. When asked about the effect of limiting the plaintiff's use of her hands to only five percent of the workday she testified that such a restriction "would rule out all jobs that would exist in any number." The VE also testified that unscheduled work breaks beyond

those generally acceptable for unskilled work would eliminate all jobs.  Therefore, the plaintiff would be disabled if the RFC form completed by Dr. Sparks was found credible.

The plaintiff argues that the ALJ failed to properly discredit Dr. Sparks' RFC evaluation.  The reason given by the ALJ for not crediting Dr. Sparks was that "[t]here is nothing to support his assessment other than her subjective symptoms."  Record 38.  A review of the medical record shows that the ALJ was mistaken.

On September 17, 2004, Dr. Sparks examined the plaintiff and found that "she does have trigger point tenderness noted in the back of the head, neck, shoulders, and along the scapula, the lower back, and anterior shoulders, but not in the elbows and not in the medial knees."  Record 221.  At this time he diagnosed polymyalgias, muscle pain, weakness, and fatigue.  Dr. Sparks noted that "[t]his is most likely fibromyalgia."  Record 221.  At her next visit, Dr. Sparks found no change in plaintiff's physical examination and the diagnosis now included "[f]ibromyalgia which is stable on conservative treatment."  Record 220.  Plaintiff continued to see Dr. Sparks and on July 11, 2006, on musculoskeletal examination the plaintiff had "pain and tenderness in the trapezius, posterior cervical muscles, and a little in the anterior chest and triceps but none in the elbows or knees."  Record 218.  Dr. Sparks continued to diagnose fibromyalgia.  On August 17, 2006, the plaintiff saw Dr. Sparks and reported severe fatigue with exacerbations of her fibromyalgia.  The plaintiff's musculoskeletal examination was "[u]nchanged and still reveals moderate amount of trigger points."  On May 22, 2007, Dr.

Sparks noted the plaintiff had pain and tenderness in multiple areas.  Record 203.  On January 8, 2008, the plaintiff returned to Dr. Sparks in follow-up "of her fibromyalgia and chronic back pain, chronic fatigue syndrome, insomnia and sleep disturbances."  Record 196.  Although Dr. Sparks noted that she had "just a few fewer trigger points that are tender compared to what they had been in the past," he made changes in her medications that he hoped would help with her chronic pain.  Record 196.

As can be seen from the above treatment records, Dr. Sparks noted the presence of tender trigger points during numerous office visits.  In his RFC assessment Dr. Sparks indicated that the plaintiff met the American College of Rheumatology criteria for fibromyalgia. Record 188.  As noted by the court in <u>Sarchet,</u> it is the presence of tender trigger points in at least 11 of 18 specified areas that satisfies the diagnostic criteria for fibromyalgia.  Dr. Sparks treated the plaintiff's fibromyalgia over a long period of time and was in the best position to assess its impact upon the plaintiff's ability to perform work related activities.  <u>See</u>, <u>Stewart v. Apfel</u>, 245 F.3d 793, 2000 U.S. App. Lexis 33214 (11th Cir. December 20, 2000) (unpublished decision) (court of appeals reversed and remanded for award of benefits  based upon opinions of plaintiffs's doctors that she was unable to work due to fibromyalgia).  The court in <u>Stewart</u> emphasized that the Social Security Administration has acknowledged fibromyalgia is not detectable through diagnostic tests but rather through medically accepted clinical techniques that show the existence of an impairment. 2000 Lexis 33214 at *8.  Therefore, the ALJ's rejection of Dr. Sparks' February 8, 2008, RFC assessment because it was only supported

by the plaintiff subjective symptoms was improper and is not supported by substantial evidence. Accordingly, under the law of this Circuit, Dr. Sparks opinions expressed on his February 8, 2008, RFC form must be accepted as true.

Because the vocational expert testified that the plaintiff would be unable to perform any jobs if the plaintiff was limited as indicated by Dr. Sparks, she is disabled within the meaning of Social Security Act. This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id. An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 16 March 2011.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.